**Ruth E. HANIFIN, Plaintiff and Appellant,**

v.

**Robert D. MARSDEN and Herma R. Marsden, Defendants and Appellees.**

No. 12756.

Supreme Court of South Dakota.

Argued Jan. 28, 1980.

Decided Oct. 8, 1980.

Wayne F. Gilbert of Gunderson, Farrar, Aldrich, Warder & De Mersseman, Rapid City, for plaintiff and appellant.

Eugene W. Christol, Rapid City, for defendants and appellees.

WOLLMAN, Chief Justice.

Appellant, Ruth Hanifin, appeals from the judgment of the trial court that denied her action for damages against appellees, Robert and Herma Marsden. We affirm.

Appellant and Robert Marsden are sister and brother, the children of Clarence Marsden and Edith Marsden. Clarence Marsden owned a ranch of approximately 1,730 acres near Wall, South Dakota. Robert was born on the ranch and spent all of his life there, except for the time that he spent in the military service and a period during which he taught school. Robert returned to the ranch in 1947 at his father's request, whereupon the two of them entered into an agreement under which Robert managed the ranch in return for a percentage of the ranch income. In 1956 Clarence leased the ranch to Robert. On January 28, 1969, Clarence and Edith signed a contract for deed whereby they agreed to sell the ranch property to Robert and Herma for $30,000, payable at the rate of $2,000 per year, plus interest, the payments to be made commencing November 1, 1969. On that same date, Clarence and Edith executed a quitclaim deed conveying the ranch property to Robert and Herma.

In March of 1970, Clarence consulted his attorney for the purpose of having a will prepared. He advised the attorney that he was dependent upon Robert to operate the ranch; that Robert had worked hard in improving the ranch; and that he, Clarence, was concerned that Robert had no protection. The attorney advised Clarence that the only way to give Robert absolute protection was by deed. Clarence responded by saying that he would give the matter of a deed further thought.

On October 30, 1970, Clarence recorded the quitclaim deed described above. He did not deliver the deed to Robert, nor did he tell Robert that he had deeded the ranch to him. Robert made the annual payments due in 1970, 1971, and 1972, which Clarence accepted. Clarence died on June 7, 1973.

His will named his wife as sole beneficiary. The ranch property was not included as an asset in his estate. Edith Marsden died on November 24, 1974. Her will named appellant and Robert as equal beneficiaries. No probate proceedings were commenced with respect to her estate. Appellant commenced the instant action in June of 1977, asking for recovery of $11,000, which represents one-half of the balance she claims is due on the contract for deed.

From September of 1948 through November of 1972, Clarence made eleven gifts of cash to appellant totaling $24,500. These gifts ranged in amount from $2,000 in 1948, 1959, 1962, and 1963, to $2,500 in 1964, to $1,000 in 1965 and 1966, to $3,000 in 1969, 1970, 1971, and 1972.

The trial court found that Clarence and Edith intended a present conveyance of the ranch property to Robert and Herma at the time Clarence recorded the deed. The trial court concluded that the unexplained acceptance of the land payments by the elder Marsdens subsequent to the recordation of the deed did not rebut the presumption of delivery arising from the execution, acknowledgment and recordation of the deed. The trial court concluded further that the recordation constituted a valid delivery of the deed.

■ Whether a deed has been delivered is a question of intent to be found from all the facts surrounding the transaction. *Nelson v. Nelson*, 293 N.W.2d 463 (S.D.1980); *Hagen v. Palmer*, 87 S.D. 485, 210 N.W.2d 164 (1973); *Senechal v. Senachal*, 79 S.D. 416, 112 N.W.2d 618 (1962); *Huber v. Backus*, 79 S.D. 342, 112 N.W.2d 238 (1961); *McGillivray v. Wipf*, 64 S.D. 367, 266 N.W. 724 (1936).

■ To constitute a delivery, the grantor must part with the legal possession of the deed and of all right to retain it. *Huber v. Backus*, supra; *Cassidy v. Holland*, 27 S.D. 287, 130 N.W. 771 (1911). "The fact that a deed has been duly executed, acknowledged, and recorded is prima facie evidence of its delivery." *Huber v. Backus*, supra, 79 S.D. at 346, 112 N.W.2d at

240. It is the fact of recordation by one of the grantors that distinguishes this case from those cases in which this Court has found that delivery had not been accomplished. See, e. g., *Larsen v. Morrison*, 293 N.W.2d 468 (S.D.1980); *Nelson v. Nelson*, supra; *Spitzer v. Spitzer*, 84 S.D. 147, 168 N.W.2d 718 (1969); *Lewis v. Tinsley*, 66 S.D. 648, 287 N.W. 507 (1939); *Cassidy v. Holland*, supra.

Although the facts in the instant case differ in many respects from those in *Hagen v. Palmer*, supra, we believe that the concept of constructive delivery approved in that case is applicable here. The concept of constructive delivery is expressly recognized by statute. SDCL 43–4–9 provides: "Though a grant be not actually delivered into the possession of the grantee, it is yet to be deemed constructively delivered where the instrument is, by the agreement of the parties at the time of execution, understood to be delivered, and under such circumstances that the grantee is entitled to immediate delivery." Likewise, SDCL 43–4–10 provides: "Though a grant be not actually delivered into the possession of the grantee, it is yet to be deemed constructively delivered where it is delivered to a stranger for the benefit of a grantee, and his assent is shown or may be presumed."

We conclude that the circumstances surrounding the execution and recordation of the deed in question support a finding that the deed was constructively delivered to Robert and Herma. Clarence recorded the deed only after considering his attorney's advice that the use of a deed was the only means by which he could carry out his desire to afford his son protection. In the context of the conversation between Clarence and the attorney, it is clear that Clarence used the word "protection" in the sense of insuring that Robert's long and faithful assistance in operating the ranch and in caring for his parents would be rewarded by way of a grant of the ranch property that would not be subject to the contingencies inherent in a contract for deed. That Clarence neither delivered the deed to Robert nor told him that it had

been recorded did not vitiate the irrevocability of the act of recordation and the constructive delivery that flowed from that act. What has been written by the Supreme Court of Oregon with respect to the concept of delivery is applicable here:

We commonly speak of the delivery of a deed. However, as the term is used in the law delivery is effected by a mental, not a physical process. Properly defined, delivery describes the passage of a property interest, normally the full legal title, from the grantor to the grantee. The interest passes if the grantor manifests the intention to pass it immediately—in the case of transfers of interest in real property the intention to make legally operative a properly executed deed . . .

The handing over of the deed to the grantee is significant only as evidence reflecting the intent of the grantor. Likewise the retention of the deed by the grantor is not controlling and it may be shown that in spite of the failure to transfer physically the deed to the grantee, the grantor intended the deed to have an immediate operative effect to pass all or a part of his interest in the land . . . .

*Halleck v. Halleck*, 216 Or. 23, 337 P.2d 330, 332–33 (1959) (citations omitted). Likewise, it has been held that "there is an effective delivery of a deed when the grantor causes the instrument to be recorded, notwithstanding the grantee knew nothing of its execution or of its having been filed of record." *Corbett v. Corbett*, 249 N.C. 585, 107 S.E.2d 165, 169 (1959); Annot., 129 A.L.R. 11 (1940).

It is true that Clarence's acceptance of three payments on the contract for deed following the recording of the deed was inconsistent with the purport of the deed, but acts inconsistent with a deed are not necessarily sufficient to overcome the presumed intent of the grantor. *Huber v. Backus*, supra; *Strain v. Ferris*, 65 S.D. 226, 272 N.W. 677 (1937). This is especially true in cases where there is a close relationship, such as parent and child, between the grantor and grantee. See, e. g, *Corkins v.*

*Corkins,* 358 Mich. 691, 101 N.W.2d 362 (1960); *Chapman v. Chapman,* 400 P.2d 831 (Okl.1965); 23 Am.Jur.2d *Deeds* § 118 (1965). In *Karlen v. Karlen,* 89 S.D. 523, 235 N.W.2d 269 (1975), we recognized the significance of the relationship between the grantor and grantee in the context of acts or words of the grantor apparently inconsistent with a finding of delivery. We held to be applicable the following language from *Chamberlain v. Larsen,* 83 Utah 420, 29 P.2d 355, 363 (1934):

> "[t]hat the grantor, after the execution of the deed, continued to pay the taxes on the property, carried the insurance in her name, and expressed to various persons a desire to sell a part or all of the property is not, when the relationship existing between the grantor and grantee is taken into consideration, inconsistent with an actual delivery of the deed."

89 S.D. at 531, 235 N.W.2d at 273.

When viewed in the light of his announced intention of wanting to protect his son and his demonstrated pattern of making annual gifts to appellant, the effect of which was to somewhat equalize the amounts that ultimately were distributed to appellant and Robert, Clarence's acceptance of the postrecordation land payments was not so inconsistent with the presumption of delivery arising from the fact of recordation to compel a finding of nondelivery. That there was not the change in the position of the parties with respect to the land that occurred in *Hagen v. Palmer,* supra, is not significant, given the fact that Robert was in possession of and paying taxes on the land under the terms of the contract.

We hold that the circumstances surrounding the execution and recordation of the deed support the trial court's finding that there was a valid delivery of the deed.

We have examined the other contentions raised by appellant and conclude that to the extent that they are not rendered moot by our decision, they are without merit.

The judgment appealed from is affirmed.

All the Justices concur.